Good afternoon. The Court today has three cases on for oral argument, and two cases will be submitted on the briefs. For the benefit of the Council, if you're not familiar with our lighting system, the yellow light will come on when you're beginning to consume your rebuttal time. The red light means your time has expired entirely. Please, furthermore, be mindful that we have read the briefs carefully. We are familiar with the facts of the case and the arguments, so your time is limited. So do get directly to the legal issues you want to present to us today, and don't feel the obligation to spend time on the procedural or factual aspects of the case. That said, we'll hear argument first in No. 06-1010, on Classified Cosmetics v. Del Laboratories. You're saving, I think, five minutes for rebuttal? Yes, Your Honor, I will. Gary Hecker for Classified Cosmetics. May it please the Court, I will address three points for the Court's consideration, relying on our papers for the remainder. First, the District Court erred in not performing its mandatory gatekeeping function under Daubert v. Merrill Dow Pharmaceutical over formal written objection from plaintiff, thereby admitting the expert report as the sole evidence to support summary judgment of patent invalidity on inoperability. Second, that the District Court erred by not properly applying the summary judgment standard. And third, that the Court erred in its claim construction of the term synergistic film-forming effect, relying on a dictionary definition not supported by the patent specification, and we submit without considering the patent specification at all. The Court did not comport with the compliance requirements of Daubert, and we know why. The Court, in its summary judgment order on page 12, states, Plaintiff has not filed a Daubert motion, and this objection is overruled. Similarly, in the Rule 59e motion hearing, the Court stated, the fact is, there wasn't a challenge under Daubert. We submit that's contrary to governing law. Plaintiff filed a formal written objection to the defendant's expert report, which was, by the way, the sole evidence for the summary judgment in this case. I have the cites for that, of course. That included a rebuttal expert report and supporting evidence of that report, which was exhaustive. It also included deposition testimony and other documentary evidence. What do you say with respect to the Court's comment during the hearing on the reconsideration motion that I made? The Court says that there was a finding that he, and this is a reference to Wilde, was authorized, competent, and well-founded in reaching his expert conclusion and drafting his declaration and having me consider it. On the face of it, it looks like a Daubert-type finding on the merits of the question, as opposed to a dismissal of Daubert on a procedural ground and not having raised it adequately. Actually, Your Honor, I would disagree. Daubert relates to methodology, not to the credentials or qualifications of the expert. Well-founded in reaching his expert conclusion sounds like a conclusion, admittedly perhaps shorthand, but nonetheless a conclusion, that there was a logical connection between the process and the conclusion that was reached. I see, Your Honor. Sounds like Daubert. Yes, it's mandatory under Daubert and the cases that follow it that the actual findings and analysis be placed on the record. The Court must place the relevant Daubert factors and its analysis on the record so the appellate court can consider whether or not those Daubert whether the Daubert analysis was correct. So, for example, Murktar, Dodge, and Goebel, Murktar out of the Ninth Circuit and Dodge and Goebel out of the Tenth. And there are a number of factors, of course, that the Court's aware of. Has the scientific technique been tested? Has it been subject to peer review or publication? Is there any known error rates? Is the theory accepted in the community? None of these points were raised or addressed by the Court, and there are no findings in the record whatsoever. We submit that the Court simply did not comply with the compliance level requirement of Daubert, which is they simply did not perform the gatekeeping function at all. And secondly, there is nothing on the record or any findings that would indicate that they did. Mr. Record, are we required or bound to apply the Ninth Circuit law in this case? The law of the forum circuit is the law that would apply as to whether or not Daubert was So we're bound by the Ninth Circuit law? I wouldn't say that you're bound by the Ninth Circuit, Your Honor. I think that you could look to courts of other circuits, but I think Murktar specifically refers to the other cases such as Dodge, and I believe Dodge and Goebel, in proving the reasoning of those cases. And further, there's nothing inconsistent in Daubert or in anything cited by the opponent that would render Murktar inapplicable here. But if the Tenth Circuit and the Ninth Circuit are in conflict on some of these Daubert issues, we're bound to follow the Ninth Circuit, are we not? Yes, Your Honor, I believe so. We therefore submit that Daubert was not satisfied. Well, the Ninth Circuit in the remand of Daubert indicated its suspicion, if you will, with respect to expert evidence that is produced solely for purposes of litigation. That wasn't, of course, a patent case. But in a patent case, if what you're trying to do is to get an expert to testify as to infringement or validity, the person needs to know what the scope of the claim is. So in this case, you had the expert whose declaration you contest was delivered about a year after the claim construction ruling had been handed down and expressly cited the district court's claim construction. Isn't that normal in a patent case? You cite the Daubert case and tell us that we should be suspicious of litigation, develop testimony, if you will. Well, there are innumerable flaws in the expert report. The fact that he refers to the claim interpretation indicates, of course, that the tests were specifically designed in the context of litigation, obviously. He's doing the tests in the context. Well, he was looking to see if there was a particular synergistic effect, that is to say, the one that the district court had told him to look for, if you will. That's correct. But we submit the court simply did not determine whether or not the tests that were performed were scientific, whether the techniques had known error rates. In fact, the testimony of the expert was that there were no known error rates, and he didn't know what they were, if there were any. But to follow up on Judge Klementer's question, you're not suggesting, are you, that any test which is done after claim construction in the context of a patent litigation would be suspect under the Ninth Circuit's rule, even though the Ninth Circuit said something like that in Daubert? That's not what you're urging us to adopt, is it? No, Your Honor. What do we do with that language which comes from the circuit that you say we should be following here? Well, I think that all that's required is if it is specific to the patent evaluation, and in particular if it relates to summary judgment, then the level of scrutiny in assuring that the tests that were performed were tests that were accepted in the community, have known error rates, were subject to peer review, and the like are present. You're backing off your brief position then, aren't you, a little bit? Because at the bottom of page 37 in your brief, you say, if the expert's testimony is not based on independent research, but instead based on research analysis done specifically for litigation, the proffering party must also come forward with other objective evidence. Well, the independent research we're referring to here, Your Honor, is the test methods that were used. The test methodology was not designed by the expert. It was designed by the lawyers. The mixing was not done by the expert. The procedures were not devised by the expert. The technique of changing all of the chemical components rather than just one as a control context does not comport with any standards that were identified and was, in fact, devised, I believe, by Mr. Eich and the litigation counsel. But our standard of review is abuse of discretion. The standard of review on whether or not Daubert was undertaken is a de novo standard of review. That is, was the Daubert analysis done at all? Well, if it was done at all, then the question is whether or not, when it was done, did the district court abuse its discretion when it resolved the Daubert factors? That's correct, Your Honor. But when there are no findings on the record that would be among any of the findings that are elucidated in Daubert or in Wuchtar, then that is, in effect, or per se, if you will, an abuse of discretion. How specific does the finding have to be? The finding has to be sufficient so that the appellate court can make a determination as to whether the analysis that was done by the district court was reasoned and whether it took into account the Daubert factors. None, in this case, of those Daubert factors that are identified in the case law were identified or described by the judge at all. He simply does a weighing of the evidence. He identifies evidence in the opinion and then weighs it, which brings me to the issue of summary judgment. Well, he does make a statement in the summary judgment order saying, in effect, that he did consider all the Daubert factors. That's insufficient for the appellate court to render a review. It's insufficient under Wuchtar, and it's insufficient under Daubert. It simply does not satisfy the gatekeeping function to say that you did it without providing any analysis as to how you did it. And if you look at the opinion, it identifies tests of both parties, of the rebuttal evidence as well, but it just rejects the evidence of classified out of hand and accepts the expert opinion, but the factual discussion, although it has some length to it, does not address the factors whatsoever. On the issue of summary judgment, the first threshold question is the defendant's evidence capable of satisfying the clear and convincing standard of the invalidity. Take it alone. Here, we submit that the evidence that was submitted was equivocal from the outset and wouldn't suffice to satisfy the clear and convincing standard in and of itself. The wild opinion stated that if Halston had a synergistic film-forming effect, so did Singleton. And then he says, if Halston lacked the synergistic film-forming effect, so did Singleton. Well, the opinion of the expert is not that there is a synergistic film-forming effect. The opinion of the expert was that if Halston has one, Singleton has one. If Halston doesn't, Singleton doesn't. It's completely equivocal and does not rise to the sufficiency of clear and convincing evidence. To quote specifically, he states, based on the test results, I have formed the opinion that if there is a synergistic film-forming effect in the sample identified as Halston Figure 4, as that effect is described in the 541 Patten and de Berg Declaration, then this claimed effect is also present in the sample identified as Singleton Example 3. And if there is no synergistic film-forming effect in the sample identified as Singleton Example 3, then the effect is also absent in the sample identified as Halston Figure 4. That's at A1692. So the expert's opinion, which he rendered, and we know why he did that, is if it is, which is an if, that is, if it has a synergistic film-forming effect, then so does Singleton. He never actually says that it has that synergistic film-forming effect. The reason we submit that that occurred is because there was a desire to preserve an argument on anticipation, namely, if there's a synergistic film-forming effect in Halston, then Singleton similarly has it. So they were trying to preserve or maintain their potential anticipation defense. And similarly, they wanted to preserve the enablement defense or apply the enablement defense. So they say if it lacked it, so did Singleton, suggesting that the lack of a synergistic film-forming effect would be problematic there. You're into your rebuttal time. Would you like to save the remainder of it? I showed 157, Your Honor. That's right. 157 of your total time, that is, I alluded to earlier, once the yellow light comes into your rebuttal time. OK. I'm going to just take a moment to move into my rebuttal time for claim construction. Briefly on claim construction, the definition adopted by the court for synergistic film-forming effect requires that the sum of two components be greater than the parts, which is inconsistent with the patent specification. The district court relied exclusively on dictionary definitions and said so. It said it relied heavily on dictionary definitions that's inappropriate under Phillips. Further, the specification does not show, teachers suggest that the sum must be greater than the parts. It expressly states that the synthetic wax acts in concert to produce a film. And it is that that acts in concert to produce a synergistic effect, right? No, Your Honor. The language acts in concert is language that comes after the discussion of synergistic film-forming effect and explains that's what the synergistic film-forming effect is. It's an acting in concert. There's no suggestion in the specification anywhere. And in fact, at column 7, line 20, it says the wax slash titanium dioxide film. It's simply referring to the combination of those two things. And the court recognized that after Markman, perhaps inadvertently, on A10 to A11, where it refers to those two paragraphs where it talks about synergistic film-forming effect and then says, namely, the synergistic wax acts in concert with the micronized titanium dioxide to produce a thin, exceedingly uniform film. So the court seemed to have recognized that the synergistic film-forming effect was, in fact, no more than acting in concert and did not require the additional limitation of the two together being greater than the sum of the individual parts. Thank you. Very well. Mr. Rookie? Thank you, Your Honor. May it please the court. I think the first thing we need to do this afternoon is put the Daubert analysis in the proper perspective and in the proper framework. And the best place to start in that analysis is with the language of Daubert itself.    of the Daubert analysis. They are the court-listed language of the Daubert analysis. They listed a number of factors that may be considered by district courts in fulfilling their gatekeeping duties. But the Supreme Court in Daubert also stated that it did not put the court to set forth the definitive checklist or test that must be employed in every situation. Six years later, the Supreme Court revisited this issue in the Kumho-Tyre case and made it very clear there that courts have considerable leeway in deciding in a particular case how to go about determining whether a particular expert testimony is reliable. And that the abuse of discretion standard does apply both to the ultimate reliability determination as well as to the method that the district court uses in making that determination. Federal Rule of Evidence 702, which was amended in direct response to Daubert, also explains in the advisory committee notes the flexibility and ingenuity that courts have in conducting their Daubert analysis. And also states that rejecting expert testimony is the exception rather than the rule. But that flexibility is not built into the point where the lower court can disregard the requirement of being specific as to considering all of the Daubert functions. The factors have to at least be considered and stated in the opinion. Otherwise, how can we review whether or not any of the factors are considered? Your Honor, I do agree that obviously the district court has an obligation to make a reliability determination and to put enough into the record so that when we're standing here before a court of appeal, the court has the ability to review the district court's decision under the abuse of discretion standard. And we believe that is exactly what happened in this case. We think the issue of the court's comment that a Daubert motion wasn't filed is a bit of a distraction. Because the court did confirm that the motion for reconsideration that it had conducted a Daubert analysis, and it is true, the classified did not ask for an evidentiary hearing or for an indeliminate motion. So that type of motion was not a Daubert motion. But they objected very specifically to the reports. That's correct, Your Honor. Isn't that sufficient? That is certainly sufficient to put the issue of Dale's obligation to satisfy Daubert before the court. We don't disagree with that, Your Honor. Obviously, the court always has a gatekeeping duty. The court does not always have the obligation to conduct some sort of indeliminate hearing or evidentiary hearing every time someone objects to evidence. That's confirmed even by some of the cases that classified sites suggest to Diaz. Well, I don't think that there's a requirement of having a hearing or otherwise for filing a motion if you object to the evidence coming in. At least you have set up purposes for appeal at that point if the objection is overruled. But the specificity with which the factors are outlined by the court below are necessary for us to at least review it. We can't dig through 1,500 pages of documents in order to tease out or determine what basis the Daubert factors were considered. I couldn't agree more, Your Honor. I think that's the reason why an abusive discretion standard is appropriate. It's not up to the Court of Appeal to second-guess what the district court did. It's up to the Court of Appeal to see if the district court discharged its duty under that abusive discretion standard. And we believe there are findings in the record with regards to the reliability of a wild report. In the record made by the court or in the opinions filed by the court? Well, the opinions filed by the court and also by the transcript of the hearing, both on summary judgment and on the motion for reconsideration. And the court did consider the objections. I don't think there was any question there. The court goes on for five pages in the summary judgment order, discussing the methodology employed by Mr. Wild. It then goes on for another few pages, discussing and overruling the objections. But does that issue go to relevancy or to reliability? Well, I think reliability is one of the two prongs that the court looks at under Daugherty. And I think it goes to the reliability as kind of a baseline fundamental finding. Because if it was not reliable, it would not be relevant under any circumstance. But I think the court put its findings on the record, showing that the court believed that the expert testimony was both reliable and relevant. The court actually refers to the evidence as strong evidence of invalidity in a summary judgment order. Page 14 of that order at A17. I believe that is just one example of showing that the court believed that the expert analysis was both reliable and relevant. And again, at the hearing on the motion for reconsideration, the district court stated on the record that it had performed a Daugherty analysis, that it had considered all the classified objections, and that it found Mr. Wild competent and his opinions well-founded. And I do believe that that's a distinction between whether Mr. Wild was qualified as an expert, which I don't believe is an issue before the court today, and whether his opinion met the standards set by Daugherty. Where in the judge's rulings is the strongest statement of these points that you're making in summation to us? Do we find it in the summary judgment order? Yes, Your Honor. I think if you look at where in particular. I would look at several pages. It's six through 11 of the order. It's in the appendix, pages 9 through 14. It's the discussion of the methodology that is employed by Mr. Wild, which precedes the court's discussion of the objections to that evidence, in which the court rejects all of the arguments that were made in opposition to the admission of the Wild expert report. The reference to the strong evidence of invalidity is at the appendix, page 17. So where does the district court discuss the scientific support for the testing question? Well, the district court does not discuss whether this is. And where does he discuss the proper controls? Your Honor, there's not a specific discussion by the district court in that order of those factors. But I would submit that under Primo Tire, the idea of being. And where does the district court discuss the non-arbitrary and objective evaluation criteria? The non-arbitrary and objective. I didn't see that. See, this is where, at the bottom of page 14 over to 15, this is where the plaintiff objects to the Hilltop test under Daubert. The Hilltop tests have been described in some detail in the pages starting over on page 6, right? That's correct, Your Honor. And he says, I object to them because they don't have scientific support. They lack proper controls. They employ arbitrary and subjective criteria. So the results were predetermined. The plaintiff has not filed a Daubert motion, and this objection is overruled. Yes, Your Honor. Where is the balance of the discussion of application of Daubert? There is not a discussion, a checklist discussion, of the factors in Daubert, Your Honor. I don't suggest that there is. What I am suggesting is that the Supreme Court, both in Daubert and even more strongly in Como Tire, made very clear that there is no specified checklist that a court needs to. But you told us a moment ago, I think, that the district court has a duty to make reliability determinations and then to put enough in the record supporting its conclusion so that the appellate court can be satisfied that discretion is in order. That's correct, Your Honor. But you haven't pointed to any exegesis by the judge explaining why it is that the test in question passed muster under Daubert. I think the court does that both in going through the methodology that is engaged in by Mr. Wilde and then in going through the objections and looking specifically at them and finding that the court didn't find any basis for rejecting the report, that there was no showing that anything was erroneous. Where is he saying that? That's on page A-16. 15? 16. 16. Which lines? Which lines? Look at lines 6 and 7. First, the court says, plaintiff has not established any basis to reject or exclude the test samples or results as unsound. That's talking about Ms. Curry, right? That, in specific, is talking about Ms. Curry. The next paragraph, starting at line 12, plaintiff presents nothing to establish that defendant's methodology was based on faulty premises. Further down, starting at line 15, nothing in the patent language or in Westman's report establishes that testing for uniform thickness on plastic materials, independent from a test of water resistance, is erroneous. So the court may have put its Daubert findings in the context of ruling on the objections, but we submit that the court has met this threshold duty of making reliability determinations. And that that is contained in the record. We also believe that the court confirmed that itself at the hearing of the motion for reconsideration. The court made very clear that it understood, appreciated, and fulfilled its Daubert duties, and rejected the notion that it had not complied with Daubert. Now, did the court go through the Daubert checklist and tick things off one by one? No, but we don't believe that's what the Supreme Court requires. Let me ask you a perhaps related question, but one going directly to the sufficiency of the expert evidence to support the summary judgment. With respect, in particular, to the banding, the grouping of the results in five different grades, why was that process not one that left it unclear? I'm going to find myself tied up in negatives. Let me start again. Isn't it the case that by banding like that, it's very possible that some synergistic effect would not be revealed by the results? And let me give you an example. Suppose the titanium dioxide alone, that composition produced, let's say, pick one, 65% adherence, and the wax alone produces 65% adherence, but together they produce 85% adherence. That would seem like a demonstration of synergistic effect, but all three would get a grade of one under the test, right? That's right. Now, why would that test then be valid as a means of showing that there was no synergistic effect? I think given the manner in which the test was performed and the statistical analysis that was performed and as a check against those tests, that the grade still would be sufficient for picking up synergistic effect. Take my example. If you had those numbers, that would be synergistic effect, correct? I would say so. Right. And yet, the test results would be 1-1-1, correct? i.e. no change between the three. That's correct. 1-1-3. Now, why would I not assume from looking at the results of the test that there was no synergistic effect when, in fact, we have agreed that there was? Well, Your Honor, the problem is that there's no way to necessarily quantify what a synergistic film-forming effect is. I understand, but the question is, does this test prove what it purports to prove? Does it prove what it set out to prove? And in my example, it seems to me, unless you tell me there's some flaw in my example as it pertains to this case, it seems to me it doesn't prove what it purports to prove because we have a case in which there is a synergistic effect, but the test does not reveal it. Then it's correct that the test has not revealed the existence within that level of mathematical precision. You're correct, Your Honor. I mean, that's a pretty substantial difference. You go from 65 to 85. I would say that's not minuscule, at least off the cuff. Well, Your Honor, I mean, the issue... Go ahead. That's correct. But the issue is whether his results were reliable and whether the district court used his discretion. Well, that's the Dover part of the question. But even if you say that this test was admissible, that doesn't make it probative. That is to say, we're now sort of in the area of saying, well, okay, so the test comes in. So what? What does it prove? And if it doesn't have some fairly convincing probative effect, it just fails to show that there is no synergistic effect when there might be some, it seems to me then you have no basis for the summary judgment. Well, it's certainly a difficult issue because in your example you're talking about a fairly extreme difference in terms of percentages, but if the difference is one-tenth of a percent or one-hundredth of a percent, where is the line there? Right. But we don't know in this case, given the relatively large bins that you have in this five-bin category, we don't know whether the difference is large or small, at least according to this test. That's correct, Your Honor. We don't know with that level of precision. What we do know is the only evidence before the district court with regard to synergistic film-forming effect or with regard to the operation of Formula 4, the 541 patent at all, was contained in the Wilder court. We believe it did fulfill Dover. We believe that that was enough to establish by clear and convincing evidence. Not with the degree of certainty that I wish the law could allow sometimes, but I don't know that it's required in this case. And the issue is whether, given the admissibility, whether that was sufficient for the court to grant summary judgment, or at least whether it was sufficient to shift the burden on summary judgment to classify to come forward with actual evidence of rebuttal. That is something the classified never did. The court discharged its Dover duty. The court, we believe, made the requisite reliability of determination and did not abuse its discretion in how it did that and how it placed those determinations in the record or except in the evidence. We believe the judgment was proper and should be affirmed. Thank you. Thank you. Now, Mr. Hecker, you have used up all of your time, but we will give you one minute for rebuttal, if you choose to use it. Thank you, Your Honor. We agree with Tell's counsel in his statement that there was no express discussion of Dover or the Dover factors. And in fact, what we submit occurred is that there was a weighing of the evidence in each of the points that were raised by Tell's counsel that a plaintiff presents nothing to establish that the defendant's methodology was based on faulty premises. But first of all, it's the proffering party's duty to or an obligation to satisfy Dover, not the opponent. It says plaintiff presents nothing that establishes that any disparity in the weight is unusual. I reject Westman's challenges for the following reasons, et cetera. I reject your attack on the Curry Declaration. At each step of the way in the court's order, it weighed the evidence and rejected the evidence of classified cosmetics. What the court should have done was taken all of that evidence as true and alight most favorable to the non-movement. And with that in mind, could a reasonable jury return a verdict for the non-moving party with that under consideration? And we submit that didn't occur. Thank you, and thank the counsel. The case is submitted.